**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

March 1, 2021

David L. Finger, Esquire
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange Street, 7th Floor
Wilmington, DE 19801

Michele Darbeau
7901 South Run View
Springfield, VA 22153

Re: *Patricia A. Robinson v. Michele Darbeau*,
C.A. No. 2019-0853-KSJM

Dear Counsel and Ms. Darbeau:

This is my post-trial decision in the above-referenced action. Although this decision takes the form of a letter opinion, it has the same force and effect as any other form of opinion.

The plaintiff, Patricia A. Robinson, brought this action seeking a declaration that the defendant, Michele Darbeau, is neither a member nor manager of the nominal defendant, Little Foot Enrichment Learning Center, LLC (the "LLC"). The certificate of formation of the LLC, however, identifies Darbeau as a member and vests management of the LLC in the members, and Robinson presented no basis to ignore this evidence. This post-trial decision therefore enters judgment in favor of Darbeau. My factual findings and reasoning follow.

## I.   FACTUAL BACKGROUND

A one-day trial was held on August 21, 2020.  The record comprises 140 trial exhibits, live testimony from three fact witnesses, deposition testimony from ten fact witnesses, and 64 stipulations of fact.[1]

### A.   The Parties Form the LLC.

Robinson and Darbeau were domestic partners who considered themselves married, but they were never legally married.  Darbeau gave birth to their daughter in 2001.[2]  They lived together from 1996 until 2017 in Prince George's County, Maryland.[3]

Robinson was a teacher in the Arlington public school system for twenty years.[4]  Around 2002, Robinson began operating out of her home a daycare that she called Little Foot Daycare ("Little Foot").[5]  While operating Little Foot, Robinson

---

[1] The background cites to:  docket entries (by "Dkt." number); trial exhibits (by "JX" number); the trial transcript (Dkt. 72) ("Trial Tr."); and stipulated facts set forth in the Parties' Revised Joint Pre-Trial Order (Dkt. 58) ("PTO").  The following persons were deposed:  Tawana Steward, Cleo Simpson, Michelle Darbeau, Janice Mitchell, Shawn Gunn, Nesha Ramjewan-Maharajh, Patricia Robinson, Krystal Thomas, Brian Bell, Charlena Best, Ashlee Goodman-Tabari, and the parties' daughter.  The transcripts of their respective depositions are cited using the witnesses' last names and "Dep. Tr."

[2] Trial Tr. at 124:2–10 (Robinson).

[3] *See* PTO ¶¶ 8–9.

[4] Trial Tr. at 7:16–24 (Robinson).

[5] *Id.* at 9:12–10:19 (Robinson).  The name of the business changed multiple times after Robinson first began operating it, but throughout this decision the court will refer to the daycare as "Little Foot."

filed a Schedule C (profit or loss from a sole-proprietor business) to her income tax returns.[6] She was also on Little Foot's payroll.[7]

Darbeau was employed as a chemical engineer when Robinson started Little Foot, but she helped at the daycare part-time from July 2003 to August 2003.[8] Darbeau devoted more time to Little Foot after leaving her engineering position in 2003.[9] Darbeau became a full-time teacher on Little Foot's payroll in 2010.[10] Over the years, Darbeau assumed various administrative duties, such as assisting with emails, performing secretarial work, ordering supplies, and handling payroll.[11] Darbeau also purchased books and toys for Little Foot.[12]

---

[6] Trial Tr. at 155:14–16 (Darbeau); *see also* JX-66 (2013 letter from accountant); JX-80 (Robinson's 2014 income tax return); JX-85 (Robinson's 2015 income tax return); JX-97 (Robinson's 2016 income tax return); JX-103 (Robinson's 2017 income tax return). According to the LLC's accountant, a multi-member LLC would be required to fill out a Form 1065. Simpson Dep. Tr. at 12:7–19. He acknowledged that he assumed Robinson was the sole member of the LLC because "that's what [he] was told," and he filed the necessary forms "based on what they [told] me." *Id.* at 11:7–18.

[7] *See* JX-80; JX-85; JX-97; JX-103.

[8] *See* Trial Tr. at 197:18–24 (Darbeau).

[9] *See id.* at 196:14–197:4 (Darbeau).

[10] *Id.* at 36:21–37:3 (Robinson).

[11] *Id.* at 37:23–39:19 (Robinson). An email confirmation for the filing of the LLC's 2007 franchise tax and annual report was sent to Darbeau, suggesting that she may have also been involved in preparing the LLC's taxes. *See* JX-115 at DARBEAU0006010–02.

[12] JX-4; JX-47; Trial Tr. at 193:21–196:4 (Darbeau).

In 2005, Robinson and Darbeau formed the LLC under Delaware law to operate the daycare.[13]  The parties used American Incorporators Ltd. ("American Incorporators") to form the LLC.[14]  Darbeau completed the online application with American Incorporators while Robinson sat next to her.[15]  Before submitting the application, Darbeau showed Robinson the information that she had entered.[16]

### B.   Support for Darbeau's Contention That She Is a Member and Manager of the LLC

Darbeau claims that she is both a member and a manager of the LLC.  The following evidence supports her claim.

### 1.   The Certificate of Formation

American Incorporators filed a Certificate of Formation for the LLC on September 9, 2005.[17]  The Certificate of Formation stated that the "initial member(s)" were Robinson and Darbeau and vested "[m]anagement of the limited liability company . . . in the member(s) in accordance with their ownership interests,

---

[13] PTO ¶¶ 3, 12–13; *see* Trial Tr. at 47:23–48:5 (Robinson); JX-19 (Little Foot's September 2006 child-care-center license stating that it was operated by the LLC).

[14] PTO ¶ 12; Trial Tr. at 49:16–23 (Robinson).

[15] Trial Tr. at 49:22–50:7 (Robinson).

[16] *Id.* at 50:4–6 (Robinson); *see id.* at 141:23–142:5 (Darbeau).

[17] PTO ¶¶ 12–13; JX-115 at DARBEAU000607.

unless this is varied by the operating agreement."[18]  American Incorporators sent

Robinson a copy of the Certificate of Formation on September 14, 2005.[19]

### 2. Documents Describing Darbeau as a Co-Owner and Co-Director

Robinson treated Darbeau as a co-equal in connection with the LLC at all

relevant times and the documentary record reflects this.

The Little Foot contract and handbook pre-dating the LLC formation referred

to the operator using singular pronouns ("I," "me," and "my").[20]  The Little Foot

handbook post-dating the LLC formation, however, was written using plural

pronouns ("we," "us," or "our").[21]

Little Foot business cards described Darbeau as an owner and director.  The

cards she ordered in April 2006 stated that she was an "Owner/Director" of Little

Foot.[22]  The business cards that Darbeau ordered in March 2015, which were

---

[18] JX-6; JX-115 at DARBEAU000607.

[19] JX-7.

[20] *See, e.g.*, JX-1 at 5, 6, 8, 13, and 15.

[21] JX-5 at i ("Throughout this document, the words 'our,' 'we,' or 'us' refer to the providers, Ms. Patricia (Pat) Robinson and Ms. Michele (Darbeau) . . . .").  The 2011 version of the handbook used the same terminology.  *See* JX-50 at iii ("[O]ur," "we" or "us" refer to the co-owners/co-directors of Little Foot Enrichment Learning Center, Patricia Robinson and Michele Darbeau.").

[22] JX-14.  Darbeau ordered another set of business cards in September 2007 that also referred to her as a "Co-Owner/Director."  JX-25.

displayed in Little Foot's main lobby, referred to Robinson and Darbeau together as "Owners and Directors."[23]

Around 2005, Robinson and Darbeau began looking for a new location for Little Foot, and they settled on a house at 15404 Livingston Road, Accokeek, Maryland (the "Livingston Property").[24] Robinson's and Darbeau's names are on both the deed and the mortgage, although Robinson has made all of the mortgage payments.[25]

Throughout the process of converting the Livingston Property for commercial use, Robinson and Darbeau presented themselves as "Co-Owners" of Little Foot. In early 2006, Robinson and Darbeau began the process of converting the Livingston Property from a "Residential Zone" to a "Special Exception" zone.[26] The invoices from the contractors making improvements on the Livingston Property, as well as related communications, were addressed to Darbeau.[27]

---

[23] *See* JX-78 at 1; Gunn Dep. Tr. at 30:11–31:14; Thomas Dep. Tr. at 37:13–39:24; Bell Dep. Tr. at 32:15–35:21.

[24] *See* Trial Tr. at 22:19–22 (Robinson); *id.* at 148:1–3 (Darbeau); *id.* 218:18–220:1 (Gunn). Little Foot is still in operation on the Livingston Property. PTO ¶ 35.

[25] *See* PTO ¶¶ 28–29; JX-10; JX-11; Trial Tr. at 26:12–22 (Robinson).

[26] JX-50 at 7.

[27] *See* JX-12; JX-13; JX-31; JX-33.

In July 2007, Robinson and Darbeau gave a presentation to the Accokeek Development Review, and the presentation referred to Robinson and Darbeau as "Co-Owners/Co-Directors."[28]  In various letters that Robinson and Darbeau sent to state representatives in support of the zoning request, they referred to themselves as "Co-Owners."[29]  Further, Shawn Gunn and her husband—parents of a Little Foot student—wrote a letter of support for Little Foot, in which they refer to Little Foot's program as one that "Ms. Robinson and Ms. Darbeau have put together."[30]

When the Prince George's County Planning Department Development Review Division approved Little Foot's zoning request to operate a day care center for 50 children, it addressed Robinson and Darbeau as the "Applicant."[31]

When Little Foot set up online payroll services with SunTrust Bank in 2010, the application listed Darbeau as "Company Payroll Administrator" and "Company Payroll Approver," and it listed Robinson as "Company Principal" and "CoOwner [sic]."[32]  Also, when Little Foot applied for a credit card processing service, Robinson and Darbeau each signed as a "Director/Owner."[33]  Little Foot's

---

[28] JX-22 at 1.

[29] *See* JX-30; JX-88.

[30] JX-15 at 26.

[31] JX-29.

[32] JX-44 at 1, 4.

[33] JX-73 at 4.

workers' compensation plan similarly lists Robinson and Darbeau as "Partner[s]" and states that they each own 50% of the LLC.[34]

Robinson and Darbeau both interviewed potential employees and the parents of potential students.[35] Enrollment contracts between Little Foot and parents bore either Robinson's or Darbeau's signature on behalf of Little Foot (but not both).[36] Robinson and Darbeau jointly completed annual employee performance reviews,[37] and they both signed offer letters sent to potential employees of Little Foot.[38]

In this litigation, Robinson took the position that she began referring to Darbeau as a co-owner "around 2010" for the sole purpose of ensuring that parents respected Darbeau.[39] But Robinson's testimony to this effect is not credible. The evidence recounted above reflects that the practice was far more pervasive, dating back to 2005 and extending to audiences other than Little Foot parents, such as the zoning board.

---

[34] JX-98.

[35] *See* Mitchell Dep. at 11:11–13, 16:9–17:10, 29:18–21; Bell Dep. Tr. at 9:19–11:2; Gunn Dep. Tr. at 10:3–23; Thomas Dep. Tr. at 8:18–11:20.

[36] *See* JX-40 at 3 (Robinson's signature); JX-51 at 4 (Robinson's signature); JX-57 at 4 (Darbeau's signature); JX-58 at 4 (Robinson's signature); JX-62 at 4 (Darbeau's signature).

[37] *See* JX-81 at 1, 16; *see also* JX-83 at 1 (jointly writing to an applicant seeking employment).

[38] *See* JX-54 at 3; JX-90 at 3. The offer letters refer to Robinson and Darbeau as "Co-Director[s] of Little Foot." *See* JX-54 at 3; JX-90 at 3.

[39] Trial. Tr. at 65:7–67:12 (Robinson).

### 3. Financial Contributions to Little Foot

Darbeau made financial contributions to Little Foot. When Darbeau's mother passed away in August 2008, Robinson and Darbeau traveled to Trinidad for the funeral.[40] Darbeau stayed in Trinidad longer than Robinson did.[41] After Robinson had left, Darbeau sent a wire transfer in the amount of $7,025 to Little Foot's bank account.[42] On August 26, 2008, Darbeau sent an additional $10,025 to Little Foot's bank account.[43] On that same day, Darbeau transferred $3,000 to Robinson's personal account.[44] In addition, Darbeau purchased books and toys for Little Foot.[45]

---

[40] *Id.* at 18:10–16 (Robinson); *id.* at 159:15–16 (Darbeau).

[41] *See id.* at 18:10–16 (Robinson).

[42] *See* JX-34; Trial Tr. at 17:6–19:21 (Robinson).

[43] *See* JX-35; Trial Tr. at 17:6–19:21 (Robinson). Robinson contends that this money was repaid and never used for Little Foot's business, Trial Tr. at 18:17–21 (Robinson), but Robinson can point to no document supporting that contention.

[44] JX-37. Robinson suggests that this was repayment for Darbeau's plane ticket to Trinidad, *see* Trial Tr. at 19:1–18 (Robinson), but Robinson does not provide any contemporaneous support for that contention. On February 1, 2013, Darbeau also wrote a check in the amount of $7,000 to pay Little Foot's 2012 taxes. JX-61. Robinson contends that she was simply out of checks that day and repaid that amount to Darbeau. Trial Tr. at 12:13–24 (Robinson). On February 4, 2013, Robinson transferred $5,000 to Darbeau, and Little Foot transferred $1,375 to Darbeau. *See* JX-138; JX-139; JX-140. At bottom, numerous transfers were made from Darbeau to Little Foot's bank account, but it is unclear whether these funds were used to operate the business. Because the court finds Darbeau to be the more credible witness overall, these payments and her testimony with respect to them do weigh in her favor.

[45] *See supra* note 12.

### C. Support for Robinson's Contention That Darbeau Is Neither a Member Nor a Manager

Robinson denies that Darbeau is a member or manager of the LLC. She relies on two sets of facts.

#### 1. The Tax Returns

Darbeau never reported her membership or claimed LLC revenues, expenses, or other benefits on her personal tax returns, as one would expect of an LLC member.[46] She reports a salary from Little Foot on her income taxes but does not report any profit from the LLC.[47] All revenues, expenses, and mortgage tax benefits were listed solely on Robinson's tax returns.[48] In fact, Robinson and Darbeau never discussed the LLC's annual profits.[49]

Robinson and Darbeau informed their accountant that Robinson "was the sole owner" of Little Foot.[50] Based on that information, their accountant prepared

---

[46] *See* PTO ¶ 5; *see* Trial Tr. at 189:12–16 (Darbeau).

[47] *See* Trial Tr. at 155:14–17, 189:12–16 (Darbeau); JX-79 (2014 income tax return); JX-84 (2015 income tax return); JX-96 (2016 income tax return); JX-108 (2017 income tax return).

[48] *See* Trial Tr. at 155:14–17 (Darbeau); JX-66 (2013 letter from accountant); JX-80 (Robinson's 2014 income tax return); JX-85 (Robinson's 2015 income tax return); JX-97 (Robinson's 2016 income tax return); JX-103 (Robinson's 2017 income tax return).

[49] Trial Tr. at 202:6–20 (Darbeau).

[50] Simpson Dep. Tr. at 11:5–18. Their accountant acknowledged that he never verified this with any documentary support. *See id.* at 11:13–21.

Schedule C tax forms for Little Foot, which is proper for a single-member LLC but would be improper for a multi-member LLC.[51]

At trial, Darbeau explained that she was under the impression that Robinson would report the LLC's taxes on her income tax returns but that the parties would share the profits.[52] She testified that she and Robinson co-mingled their business and personal funds and that they did not accurately track profits or distributions.[53] She explained: "That's not how we, Ms. Robinson and I, operated the personal relationship or the business relationship,"[54] and "[t]here was no separation of personal and business funds."[55] Darbeau's testimony on this point was credible.

### 2. The Resolution

At trial, Robinson provided testimony concerning the events surrounding the formation of the LLC and a subsequently drafted resolution intended to memorialize Darbeau's resignation.

Because Robinson did not have a computer at the time the LLC was formed, Darbeau sat with Robinson and filled out the application for her.[56] According to

---

[51] *Id.* at 12:1–19.

[52] Trial Tr. at 200:14–202:20 (Darbeau); *see also* Darbeau Dep. Tr. at 108:3–7.

[53] Trial Tr. at 189:12–196:4, 201:17–23 (Darbeau).

[54] *Id.* 201:17–23 (Robinson).

[55] *Id.* at 196:3–4 (Darbeau).

[56] *Id.* at 49:22–50:3 (Robinson).

Robinson, Darbeau stated that she needed a "resident agent" and that Darbeau would be willing to act in that capacity for Little Foot.[57]  Robinson agreed, but she testified that Darbeau instead listed herself as a member of the LLC.[58]

Although American Incorporators sent the parties a copy of the Certificate of Formation in September 2005, Robinson testified that she did not see this copy until at least six months later.[59]  Robinson could not recall the exact timing, and her testimony on this issue was vague.[60]  She testified that she confronted Darbeau after reviewing the Certificate of Formation and that Darbeau told Robinson that she had intended to make herself the registered agent rather than a member.[61]  Robinson further recalls the parties contacting American Incorporators and American Incorporators informing them that the parties would need to execute a resolution to remove Darbeau from the LLC if that was the parties' intent.[62]

---

[57] *Id.* at 50:4–51:10 (Robinson).

[58] *Id.* at 59:6–60:17 (Robinson).

[59] *Id.* at 52:24–58:5 (Robinson).

[60] *See id.* at 57:18–58:5 ("It had to be around the time I had my surgery.  And so, if I go on that -- because I wasn't -- I hadn't been not working.  So I would have to say it was a period of time.  And it had to have been -- I know I had -- I did this before I went to have my surgery and I was getting everything in order.  So it could have been as much as nine months, six months, I would say.  Maybe even -- well, it depends if it had been a year.  But I know it was a period of time, time had gone by before I actually saw this from the date that it actually had came [sic].").

[61] *Id.* at 59:2–61:7 (Robinson).

[62] *Id.* at 60:11–62:11 (Robinson).

Robinson then executed a document called "Resolution of Change of Member of Little Foot Enrichment Learning Center LLC" (the "Resolution").[63] The document is dated May 4, 2006, but this year could be a typo.[64] Robinson testified that she signed this document around the time that she changed the name of the LLC, which bears a May 4, 2007 Secretary of State date stamp.[65]

The Resolution states that Darbeau "resigns with immediate effect" and that Robinson shall "be appointed as a sole Member of the Company."[66] Only Robinson executed the Resolution.[67]

Darbeau did not recall these events. She testified that, aside from Darbeau's involvement in forming the LLC, the events to which Robinson testified never

---

[63] JX-16. Robinson testified that Darbeau drafted the document for her. Trial Tr. at 62:12–13 (Robinson).

[64] *See* JX-16.

[65] In 2007, Robinson decided to change the name of the LLC to "Little Foot Enrichment Learning Center LLC." Trial Tr. 109:6–111:1 (Robinson). She filed a certificate of amendment affecting that change with the Secretary of State (through American Incorporators) on May 4, 2007. JX-115 at DARBEAU000600; PTO ¶ 14. (The Certificate of Amendment itself is dated May 4, 2006. *See* JX-115 at DARBEAU000600. The parties did not provide the court with an explanation regarding the one-year time difference between the date of signing and the date of filing.) The document stated that the resolution was adopted "at a meeting of the Board Of Members of Little Foot Academic Learning Center LLC*." Id.* Robinson signed that document, on which she was identified as "President" of the LLC. *Id.*

[66] JX-16. Darbeau denies that she agreed to resign as a member of the LLC. *See* Trial Tr. at 146:21–147:3 (Darbeau).

[67] JX-16.

occurred.[68] Darbeau did not know that Robinson attempted unilaterally memorialize Darbeau's resignation until the Resolution was produced during legal proceedings in 2019.[69] The court finds Darbeau's testimony to be more credible on this point.[70]

### D.     The Parties End Their Relationship.

In April 2017, Robinson contacted Charlena Best, a pastor from South Carolina who refers to herself as a "prophet."[71] Around April 26, 2017, Best visited the parties' residence and blessed the house and its occupants.[72] After Robinson informed Best that Darbeau's mother was a "witch" and that the parties had engaged

---

[68] Trial Tr. at 140:20–147:3 (Darbeau).

[69] *Id.* at 142:6–147:3 (Darbeau).

[70] Robinson also proffers the following categories of evidence as support for a finding that Darbeau is not a member of the LLC: lack of capital contribution by Darbeau; Little Foot handbooks from 2003 and 2005; and Little Foot certificates of registration from 2003. Dkt. 77, Opening Post-Trial Br. of Pl. Patricia A. Robinson ("Pl's Opening Br.") at 34–38. None carry weight. As to the lack of capital contribution, this fact does not speak to whether Darbeau is a member or manager of the LLC because capital contribution is not a requirement for either under the LLC Act. *See* 6 *Del. C.* §§ 18-301(d), 18-403. As to the Little Foot handbooks from 2003 and 2005, the former implies that Robinson is the sole operator, whereas the latter implies that Robinson and Darbeau are joint operators. *See supra* notes 20–21. If anything, these documents support Darbeau's argument that she was a member of the LLC. As to the Little Foot certificates of registration, they are unpersuasive because they were executed before the LLC was formed. *See* JX-2; JX-8.

[71] *See* Darbeau Dep. Tr. at 59:11–64:3; Best Dep. Tr. at 23:17–18.

[72] *See* Darbeau Dep. Tr. at 63:13–14; Best Dep. Tr. at 69:10–70:5.

in an animal sacrifice ritual in Trinidad at her mother's funeral, Best instructed Darbeau to burn all of her mother's belongings in order to break the curse.[73]

Text messages from Robinson to Darbeau suggest that Robinson believed that there had been a "demon" inside of Darbeau and that the only way for Darbeau to keep it from returning was to burn all pictures and belongings of her mother.[74]

Darbeau left the Brandywine Property with her daughter on May 2, 2017.[75] She ceased communicating with Robinson.[76] That same day, Darbeau transferred $16,000 from Little Foot's bank account to her personal account, approximately half of the money that had been in Little Foot's account.[77]

On June 5, 2017, Robinson sent an email to the parents of current Little Foot students, stating that "Ms. Darbeau is no longer working at Little Foot Enrichment Learning Center."[78] The 2018 version of the Little Foot parent handbook reflected that change, as it refers to Robinson by name but does not mention Darbeau.[79]

---

[73] *See* Best Dep. Tr. at 14:8–20; Trial Tr. at 90:19–94:8 (Robinson); *id.* at 160:14–167:10 (Darbeau).

[74] *See* JX-91 at DARBEAU2126.

[75] *See* Trial Tr. at 175:4–179:6 (Darbeau).

[76] *Id.* at 175:16–179:6 (Darbeau).

[77] *Id.* at 191:8–192:13 (Darbeau).

[78] JX-101.

[79] *See* JX-104.

### E.     Litigation Ensues

In 2018, Darbeau filed a civil action against Robinson in Maryland state court (the "Maryland Action").[80] The record of the Maryland Action is not entirely clear from the documents submitted as evidence. It appears that Darbeau initially sought to force a sale of the LLC and two parcels of property—the Livingston Property and the parties' personal residence—but Robinson successfully moved to remove the issue concerning the sale of the LLC from the Maryland litigation.[81] Robinson also filed counterclaims for embezzlement based on Darbeau's May 2, 2017 transfer from Little Foot's bank account.[82] On December 4, 2019, the trial court ordered sale of the properties and appointed a trustee to conduct the sale (the "Sale Order").[83]

Robinson filed an interlocutory appeal of the Sale Order and a motion to stay all proceedings pending the resolution of this action.[84] The court denied that motion

---

[80] PTO ¶ 58. In 2017, the parties were also involved in a Maryland state court proceeding filed by Robinson seeking access to her daughter. *See* PTO ¶ 11; JX-99; JX-102.

[81] *See* JX-105; JX-106.

[82] *See* JX-105; JX-111; JX-113 ¶ 2.

[83] PTO ¶ 61; JX-105 at DARBEAU001492. The court appointed Trustee Abigail Bruce-Watson to sell both properties. PTO ¶ 62.

[84] *See* JX-111; JX-113 ¶ 1.

to stay, except with respect to Robinson's embezzlement claim.[85] Robinson then filed a motion to stay pending interlocutory appeal.[86]

In the Maryland Action, Darbeau has claimed that she is both a member and manager of the LLC, as a defense to the claim of embezzlement.[87] Robinson views the claims at issue in the Maryland Action as factually intertwined with the issue of whether Darbeau is a member and manager of the LLC.[88]

Accordingly, Robinson filed this litigation in October 2019, seeking a declaration that Darbeau is neither a member nor manager of the LLC.[89] The parties completed post-trial briefing on November 17, 2020.[90] This is the court's post-trial decision.

---

[85] *See* JX-111; JX-113 ¶ 1.

[86] PTO ¶¶ 63–64.

[87] *See* JX-106 ¶¶ 2, 8; JX-113 ¶ 19 n.5.

[88] *See* JX-113 ¶ 18–19 & n.5.

[89] Dkt. 1, Verified Compl. for Declaratory J. to Determine Management of and Membership in a Limited Liability Company Pursuant to 6 *Del. C.* § 18-110. She amended her complaint on November 22, 2019. Dkt. 4, First Am. Verified Compl. for Declaratory J. to Determine Management of and Membership in a Limited Liability Company Pursuant to 6 *Del. C.* § 18-110. The Sale Order was issued in the Maryland Action while this litigation was pending.

[90] *See* Pl.'s Opening Br.; Dkt. 79, Def.'s Post-Trial Opening Br. ("Def.'s Opening Br."); Dkt. 80, Post-Trial Answering Br. of Pl. Patricia A. Robinson ("Pl.'s Answering Br."); Dkt. 81, Pro Se Def. Michele Darbeau's Post-Trial Answering Br. ("Def.'s Answering Br.").

## II.   LEGAL ANALYSIS[91]

The Delaware Limited Liability Act (the "LLC Act") establishes the legal requirements for becoming a member and manager of a limited liability company.

To attain the status of a member of a Delaware limited liability company under the LLC Act, "[a]dmission is necessary."[92]  A member may be admitted at the time of formation or at a later time.[93]  The focus of this analysis is on the requirements for admission at the time of formation, which are found in Section 18-301(a) of the LLC Act.[94]

---

[91] The parties dispute who bears the burden of proof in this action.  Darbeau argues that Robinson should bear the burden as the plaintiff because she is seeking declaratory relief, for which recent case law provides support.  *See* Def.'s Opening Br. at 55–59; *State Farm Mut. Auto. Ins. Co. v. Spine Care Del., LLC*, 238 A.3d 850, 860 n.55 (Del. 2020) (observing that "there is some debate on the burden of proof in declaratory judgment actions" and holding that "[t]he better view is that a plaintiff in a declaratory judgment action should always have the burden going forward" (quoting *Rhone-Poulenc v. GAF Chems.*, 1993 WL 125512, at *3 (Del. Ch. Apr. 8, 1993)).  Robinson argues that this is one of the limited contexts in which the burden of proof should shift to the defendant.  Pl.'s Opening Br. at 24–27.  She acknowledges the Delaware Supreme Court's recent directive in *State Farm* but observes that the court disclaimed establishing any "hard and fast rule."  *Id.* at 24 (quoting *State Farm*, 238 at 860 n.55).  In the end, "the Delaware Supreme Court has explained that the real-world benefit of burden-shifting is 'modest' and only outcome-determinative in the 'very few cases' where the 'evidence is in equipoise.'"  *In re Dole Food Co., Inc. S'holder Litig.*, 2015 WL 5052214, at *4 (Del. Ch. Aug. 27, 2015) (quoting *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1242 (Del. 2012)).  Because the evidence in this case is not equipoise, this decision does not resolve the issue of burden allocation.

[92] Robert L. Symonds, Jr. & Matthew J. O'Toole, *Delaware Limited Liability Companies* § 5.02[A], at 5-13 (2d ed. 2019); *see also* 6 *Del. C.* § 18-101(13) (defining "member").

[93] *See* 6 *Del. C.* § 18-301 ("Admission of Members").

[94] *See id.* § 18-301(a).

Section 18-301(a) establishes two ways to admit a member in connection with the formation of a limited liability company:

> In connection with the formation of a limited liability company, a person is admitted as a member . . . upon the later to occur of: (1) [t]he formation of the limited liability company; or (2) [t]he time provided in and upon compliance with the limited liability company agreement or, if the limited liability company agreement does not so provide, when the person's admission is reflected in the records of the limited liability company or as otherwise provided in the limited liability company agreement.[95]

Of the two options presented in Section 18-301(a), the second permits a person to be admitted as a member "when the person's admission is reflected in the records of the limited liability company."[96] The records of a limited liability company at the time of formation include, at a minimum, the certificate of formation,[97] and the LLC Act provides that members may be identified at the time of formation in the certificate of formation itself.[98] Further, "[a] person may be admitted to a limited

---

[95] *Id.* § 18-301(a).

[96] *Id.* § 18-301(a)(2).

[97] *See Perry v. Neupert*, 2019 WL 719000, at *31–32 (Del. Ch. Feb. 15, 2019) (referring to a deed of assignment as a "record[]" under Section 18-301); *In re Carlisle Etcetera LLC*, 114 A.3d 592, 598–601 (Del. Ch. 2015) (referring to tax forms and draft agreements as "records" under Section 18-301).

[98] 6 *Del. C.* § 18-102(2) (providing that certificates of formation "[m]ay contain the name of a member or manager").

liability company as a member . . . without making a contribution or being obligated to make a contribution to the limited liability company."[99]

To attain the status of manager of a limited liability company, the LLC Act provides:

> "Manager" means a person who is named as a manager of a limited liability company in, or designated as a manager of a limited liability company pursuant to, a limited liability company agreement or similar instrument under which the limited liability company is formed . . . .[100]

The language "similar instrument" includes a certificate of formation. Indeed, the LLC Act leaves open the possibility that the certification of formation may serve as the entire limited liability company agreement or that it supply portions of the limited liability company agreement.[101]

Putting it all together, a person may attain the status of member at the time of formation if the member is identified in the certificate of incorporation. Similarly, a person may attain the status of manager at the time of formation if that person is identified as a manager in the certificate of formation.

---

[99] *Id.* § 18-301(d).

[100] *Id.* § 18-101(12); *see also id.* § 18-401 (providing that "[a] person may be named or designated as a manager of the limited liability company as provided in § 18-101(12) of this title").

[101] *See* Symonds, Jr. & O'Toole, *supra* note 92 § 4.02[C][1][a], at 4-20–24 ("The Certificate of Formation as a Limited Liability Agreement").

In this case, the Certificate of Formation identifies Darbeau as a member and provides that management is vested in the members. Article Fifth of the Certificate of Formation states:

> Management of the limited liability company is vested in the members(s) in accordance with their ownership interests, unless this is varied by the operating agreement. . . . The initial members(s) of the limited liability company shall be: Patricia Ann Robinson [and] Michele Zelda Darbeau.[102]

This language is sufficient to admit Darbeau as a member and manager of the LLC under the LLC Act. Based on the Certificate of Incorporation, therefore, Darbeau is both a member and manager of the LLC.

Robinson's arguments to the contrary can be framed as follows: *First*, Robinson argues that Darbeau tricked Robinson when forming the LLC and that Robinson never intended for Darbeau to be a member or a manager. *Second*, Robinson argues that the LLC was never properly formed because the parties never agreed to an LLC agreement. *Third*, Robinson argues that even if Darbeau was a member under the original Certificate of Incorporation, the Resolution constituted Darbeau's resignation from the LLC.[103]

---

[102] JX-6 (formatting altered).

[103] *See* Pl.'s Opening Br. at 27–38; Pl.'s Answering Br. at 6–15. Robinson's arguments were somewhat amorphous in briefing; this decision has framed them in a way intended to give them as much force as possible.

Robinson's first argument lacks evidentiary support. Robinson relies primarily on her own testimony, which was not persuasive. Robinson also relies on the parties' tax returns, but they do not determine this issue. The record shows that the parties represented to their accountant that Robinson was the sole owner of the LLC and that Little Foot filed tax forms that were appropriate for a single-member LLC but not a multi-member LLC.[104] Although the way in which an LLC is taxed is often probative of its membership composition, it is not dispositive under Delaware law and does not overcome the weight of the evidence reflecting that Darbeau was a member of the LLC.

Robinson's second argument is similarly unavailing. Robinson impliedly argues that the LLC was not formed because there was no operating agreement. According to Robinson, Darbeau therefore could not have been made a member or manager at the time of formation. It is true that under the LLC Act, a limited liability company agreement is a necessary condition to formation.[105] It is also true that Little

---

[104] *See supra* notes 50–51 and accompanying text.

[105] 6 *Del. C.* § 18-201(d) ("A limited liability company agreement shall be entered into or otherwise existing either before, after or at the time of the filing of a certificate of formation and, whether entered into or otherwise existing before, after or at the time of such filing, may be made effective as of the effective time of such filing or at such other time or date as provided in or reflected by the limited liability company agreement."). Robinson fails to address the fact that, if there was no operating agreement, the LLC was not properly formed. Because the court finds that there was an implied operating agreement, it need not tease out this hypothetical.

Foot has never had a written limited liability company agreement.[106] Under the LLC Act, however, such an agreement may be "written, oral, or implied."[107] The options are not mutually exclusive—an agreement may be "partly written, partly oral and/or partly implied."[108]

There is sufficient evidence to find that the parties impliedly agreed to a limited liability company agreement. The record supports Darbeau's position that she impliedly entered into an LLC agreement by operating Little Foot alongside Robinson.[109] As discussed above, Robinson and Little Foot referred to Darbeau as a "Co-Owner" and "Co-Director" in countless situations and presented Darbeau as a co-equal to clients and the public, among other things.[110] Darbeau contributed to the LLC's operations, performing various administrative tasks. She also contributed financially to the LLC.

---

[106] PTO ¶ 18.

[107] 6 *Del. C.* § 18-101(9).

[108] Symonds, Jr. & O'Toole, *supra* note 92 § 4.02[A], at 4-13.

[109] Darbeau cites *In Matter of Dissolution of Arctic Ease, LLC* and *Phillips v. Hove* for the proposition that "[m]aterial participation in the management of a DLLC requires 'control or [a] decision-making role.'" Def.'s Opening Br. at 69 (citing 2016 WL 7174668 (Del. Ch. Dec. 9, 2016); 2011 WL 4404034 (Del. Ch. Sept. 22, 2011)). But these cases are referencing the definition of "manager" found in 6 *Del. C.* § 18-109, which governs personal jurisdiction. *See Arctic Ease*, 2016 WL 7174668, at *3; *Phillips*, 2011 WL 4404043, at *22. The "participates materially" language found in 6 *Del. C.* § 18-109(a) is not found in 6 *Del. C.* § 18-101 nor 6 *Del. C.* § 18-401.

[110] *See supra* Section I.B.2.

Robinson argues that there was no implied agreement because Darbeau did not "know the specific terms of an operating agreement" and instead "only [knew] what conduct [she] practiced at the daycare center at Little Foot."[111] But that conduct is the type of evidence that this court looks to in determining whether an implied-in-fact agreement existed.

Robinson also contends that "Darbeau's position appears to be based on a conflation of her personal relationship with Robinson with the idea of equal ownership of everything,"[112] but Darbeau's testimony was specific to the operation of the LLC.[113]

---

[111] Pl.'s Opening Br. at 30 (quoting Darbeau Dep. Tr. at 105:20–24).

[112] *Id.* at 31.

[113] Also, under the LLC Act, a certificate of formation may supply terms of a limited liability agreement. *See* Symonds, Jr. & O'Toole, *supra* note 92 § 4.02[C][1][a][i], at 4-20 ("The DLLC Act . . . does not require complete separation of the agreement and certificate, nor does it disallow a total or partial overlap of those documents."); *see also id.* § 4.02[C][1], at 4-19 ("[T]he DLLC Act does not dictate that a written limited liability company agreement (or any written component of the agreement) must reside in a single document."). In this case, the Certificate of Formation contains terms that would ordinarily be contained in a limited liability agreement by, for example, designating managers and prohibiting the assignment of membership interests. *See* JX-6. Although the Certificate of Formation refers to "the operating agreement," *see id.*, suggesting the existence of or intent to prepare an independent operating agreement, this reference does not foreclose the possibility that the Certificate of Formation was intended to supply certain terms.

Robinson's third argument based on the Resolution also does not warrant judgment in her favor.[114] The Resolution states that Darbeau "resigns with immediate effect" and that Robinson shall "be appointed as a sole Member of the Company."[115] Only Robinson signed the Resolution.[116]

There is a "fundamental principle under Delaware law that a majority of the members . . . of [an LLC], unless expressly granted such power by contract, have no right to take the property of other members."[117] Thus, the LLC Act does not grant members the right to resign prior to dissolution or winding up, nor does it provide the right to remove or expel other members. The LLC Act broadly provides that members may agree to such provisions in the limited liability company agreement.[118]

---

[114] Robinson made this argument in the complaint but did not advance it in briefing. Typically, a failure to brief an argument constitutes a waiver of the argument. *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived."). This decision addresses the issue in the interest of completeness.

[115] JX-16; *accord.* JX-118 at 147–48. Darbeau denies that she agreed to resign as a member of the LLC. Trial Tr. at 146:21–147:3 (Darbeau).

[116] *See* JX-16.

[117] *Walker v. Res. Dev. Co.*, 791 A.2d 799, 815 (Del. Ch. 2000).

[118] *See* Symonds, Jr. & O'Toole, *supra* note 92 § 5.04[E], at 5-58 ("The Delaware Court of Chancery has stated that there is no basis at law, apart from a contract provision, for the removal or expulsion of a member of a Delaware limited liability company by other members." (collecting cases)); 6 *Del. C.* § 18-603 (prior to the dissolution or winding up of the LLC, "[a] member may resign from a limited liability company only at the time or upon the happening of events specified in a limited liability company agreement and in accordance with the limited liability company agreement").

Viewing Robinson's arguments generously, she contends that the parties effectively agreed to a resignation provision in their implied limited liability company agreement. Thus, to remove Darbeau as a member of the LLC, Robinson claims that she need only draft and sign a resolution removing Darbeau as a member.[119] Robinson testified that Darbeau was present during the call with American Incorporators, that Darbeau drafted the Resolution, and that Darbeau was present when Robinson signed it.[120] But Darbeau testified that Robinson's entire narrative was fabricated and that she only learned of the existence of the Resolution through litigation between the parties.[121] Because the court finds Darbeau to be the more credible witness, Robinson's narrative is unhelpful.

Therefore, the Resolution did not have the effect of removing Darbeau as a member or manager of the LLC.[122]

---

[119] See Trial Tr. at 60:12–62:13 (Robinson). It bears noting that reference to "resignation" in the Resolution implies that Robinson viewed Darbeau as a member at the time she signed the Resolution, which undermines aspects of Robinson's testimony.

[120] See Trial Tr. at 61:8–62:13 (Robinson).

[121] See id. at 140:20–147:3 (Darbeau).

[122] Even if the Resolution was effective as Darbeau's "resignation" from the LLC and did not trigger dissolution, Darbeau would still be entitled to payment of the fair value of her membership interest in the LLC. See 6 Del. C. § 18-604 ("[U]pon resignation any resigning member is entitled to receive any distribution to which such member is entitled under a limited liability company agreement and, if not otherwise provided in a limited liability company agreement, such member is entitled to receive, within a reasonable time after resignation, the fair value of such member's limited liability company interest as of the date of resignation based upon such member's right to share in distributions from the

## III.   CONCLUSION

This decision finds that Darbeau was both a member and manager of the LLC. The court enters judgment in favor of Darbeau.  The parties advance arguments regarding whether Darbeau holds a 50% interest in the LLC or some lower percentage.[123]  The parties, however, did not develop evidence at trial concerning this issue, perhaps because the complaint does not affirmatively seek a declaration concerning Darbeau's ownership interests.  This decision, therefore, does not resolve the matter.[124]

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Kathaleen St. Jude McCormick
Vice Chancellor

cc:    All counsel of record (by *File & ServeXpress*)

---

limited liability company."); *see also Domain Assocs., L.L.C. v. Shah*, 2018 WL 3853531, at *13–15 (Del. Ch. Aug. 13, 2018) (providing that Section 18-604 applies to both voluntary and forced resignations or withdrawals).

[123] *See* Pl.'s Opening Br. at 31, 34; Def.'s Opening Br. at 43, 47, 53, 72–73.

[124] Robinson's briefs cite almost exclusively to cases applying partnership law, and in particular, Maryland precedent.  The court acknowledges that the "LLC Act resembles its partnership forebears."  *See Feeley v. NHAOCG, LLC*, 62 A.3d 649, 663 (Del. Ch. 2012). That said, Delaware contains a detailed LLC Act and law interpreting that Act, which this decision has applied.  Accordingly, there is no reason to discuss or distinguish Robinson's partnership law authorities.